IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-1169

Filed 1 July 2026

Property Tax Commission, No. 24PTC0499

IN THE MATTER OF THE APPEAL OF:

JAMES NELSON, JR., TRUSTEE, Appellant,

FROM THE DECISION OF THE WAKE COUNTY BOARD OF EQUALIZATION AND REVIEW

Appeal by appellant from decision of the North Carolina Property Tax Commission 27 October 2025. Heard in the Court of Appeals 3 June 2026.

*James Nelson, Jr., pro se appellant.*

*Wake County Attorney's Office, by Kenneth R. Murphy, III, for appellee.*

ARROWOOD, Judge.

James Nelson Jr. ("appellant") appeals from the decision of the North Carolina Property Tax Commission ("the Commission") affirming the decision of the Wake County Board of Equalization and Review ("the Board") determining the true value of appellant's property to be $351,023.00. For the following reasons, we reverse.

## I.    Background

Appellant owns the subject property, a residential townhome located on a .03-acre lot in Wake County. Wake County ("the County") conducted a general reappraisal effective 1 January 2024. In the reappraisal, the subject property's value was assessed to be $351,023.00. Of the total value, $75,000.00 was attributed to the

land component and $276,023.00 was attributed to the improvements. Appellant disputed the assessed value and appealed to the Board. Following a hearing, the Board determined that the value of the property was $351,023.00.

Appellant appealed the Board's decision to the Commission. Before the Commission, appellant limited the scope of his appeal to the land component of the assessment. He argued that the true value of the land was between $40,000.00 and $50,000.00. The Commission held a hearing on the appeal on 17 September 2025 at which appellant represented himself and was the sole testifying witness.

Appellant testified that all of the properties in his townhouse community, as well as several nearby communities, had identical land assessments of $75,000.00 in 2024 despite differences in lot size, location, and noise. Specifically, appellant said the other properties in his community were in a quiet and peaceful community. Meanwhile, the subject property is adjacent to a church and near a park and a fire station. Appellant testified that the church and the park can both be loud when they are hosting events and that firetrucks pass by the subject property several times a day "with 100-or-so decibel noise." Additionally, appellant said that his lot was smaller than many of the other lots valued at the same price.

Appellant contrasted the 2024 reappraisal to the 2020 reappraisal in which his land was valued lower than the surrounding properties at $25,000.00. Appellant felt that the 2020 reappraisal was fair and accounted for the differences in location and size of his lot. Appellant argued that the identical land assessments indicated that

the County was no longer considering those factors or other differences in the land, in violation of North Carolina statutes. Appellant also alleged that the identical land assessments indicated the use of an arbitrary valuation method.

To further support his contention that the subject property was improperly assessed, appellant compared his property's land assessment and the land assessment of nine other townhouse parcels that were outside of his neighborhood but still within three miles of his property. Appellant identified characteristics of the other nine properties that he claimed were not reflected by the assessments when compared to the subject property. Namely, some of the other properties were in a mixed zoning area, which appellant claimed should have resulted in a higher land value than the subject property. Yet, those properties were assessed at a lower land value.

Appellant also provided data and analysis comparing the County's land valuations in relation to lot size. The other nine townhouses were on lots ranging from 0.03 to 0.11 acres. Appellant compared the assessed land values using their actual assessment, the per-acre equivalent assessed value, and the proportion of the total assessment accounted for by the land assessment, which appellant referred to as the land-to-total-value ratio. For example, the subject property's actual assessment was $75,000.00. The subject property was 0.03 acres, leading to a per-acre value of $2,500,000.00. Additionally, the $75,000.00 assessment accounted for 21.37% of the total assessed value.

As to the actual assessed value, the subject property was assessed at the highest value, with the other land assessments ranging from $60,000.00 to $70,000.00. The subject property had the highest per-acre equivalent at $2,500,000.00 while the other nine townhomes had a median per-acre assessed value of about $1,000,000.00. The subject property had the second highest land-to-total-value ratio and the other ratios ranged from 11.05% to 26.39%. Appellant argued that these figures demonstrated that his property's land assessment was an outlier and should be lowered.

Finally, appellant also presented evidence of recent townhouse sales within three miles of the subject property. For each sale he provided the property address, date of sale, sale price, lot size, the assessed land value of the property from the County's 2024 reappraisal, and the land-to-total-value ratio using the total sale price and the assessed land value. The townhouses that appellant identified as "comparable" to his own sold for $340,000.00 to $415,000.00. Two other townhouses sold for $580,152.00 and $633,491.00 and had land assessments of $70,000.00, which appellant argued indicated that "price growth reflects structure and location, not inflated land." Appellant did not present any valuation of the sold property's land other than the County's own land assessment. Nor did appellant present an independent valuation of his property.

After appellant presented his argument, the County moved to dismiss his appeal. The County argued that appellant did not meet his burden of producing

competent evidence tending to show that the County used either an arbitrary or illegal method of valuation and that the assessment substantially exceeded the true value of the subject property. The County offered two main reasons why appellant's evidence was deficient. First, appellant was not himself a real property appraiser and did not submit a report or testimony from a real property appraiser. Second, while appellant offered some evidence of recent comparable property sales, the sales were not sufficiently analyzed or adjusted for differences in location, size, condition, date of sale, special suitability, or other appropriate factors.

Following deliberation, the Commission voted 2–1 to grant the County's motion and dismiss appellant's appeal. In its written decision, the majority found that appellant "offered no evidence concerning the actual market value of the subject lot or of the property" and as such there was no evidence that could enable them to conclude that the County's assessment of the subject property was arbitrary, illegal, or in substantial excess of the true market value. The Commission stated that appellant's evidence of the sales of nearby townhomes was deficient as it lacked analysis of the lot size or "any other factor often considered relevant to lot sales, such as location, shape topography, drainage, easements, etc." The Commission explained that the evidence of the assessments of nearby properties was also not sufficient to demonstrate the actual value of those properties or their lots because it does not follow any recognized appraisal methodology. The Commission also noted that "there is not necessarily a direct correlation between lot size and lot value[]" and oftentimes

there is "little distinction in the market for size discrepancies unless a lot could be further subdivided."

Chairman Robert C. Hunter dissented by separate opinion. Chairman Hunter wrote that appellant's lack of analysis of the property sales was not inappropriate because unlike the valuation of improvements which includes several subjective characteristics, "the analysis of land need not be so nuanced." Additionally, Chairman Hunter said that appellant "illustrated that the County ha[d] treated various properties in different ways, when lot size and locational amenities are considered" and "shown how those disparities result in an assessment for the subject lot that is substantially in excess of other lots he considers superior to the subject." Accordingly, Chairman Hunter believed appellant met his burden of production and would have voted to proceed with the County's presentation of evidence instead of dismissing the case.

Appellant provided notice of appeal to this Court on 17 November 2025.

## II.    Discussion

Appellant raises a single issue on appeal: whether the Commission erred as a matter of law by holding that appellant's evidence was insufficient to rebut the presumption that the tax assessment was correct. For the following reasons, we reverse the Commission's decision.

### A.    Standard of Review

This Court's review of decisions of the Commission is governed by N.C.G.S.

§ 105-345.2, which states in pertinent part:

> (b) So far as necessary to the decision and where presented, the court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of the terms of any Commission action. The court may affirm or reverse the decision of the Commission, declare the decision null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions, or decisions are any of the following:
>
> > (1) In violation of constitutional provisions.
> > (2) In excess of statutory authority or jurisdiction of the Commission.
> > (3) Made upon unlawful proceedings.
> > (4) Affected by other errors of law.
> > (5) Unsupported by competent, material, and substantial evidence in view of the entire record as submitted.
> > (6) Arbitrary or capricious.
>
> (c) In making these determinations, the court shall review the whole record or the portions of it that are cited by any party, and due account shall be taken of the rule of prejudicial error. The appellant shall not be permitted to rely upon any grounds for relief on appeal that were not set forth specifically in the appellant's notice of appeal filed with the Commission.

"Where a petitioner argues that the Commission's decision was affected by an error of law, we apply a *de novo* review." *In re Corning Inc.*, 247 N.C. App. 680, 686 (2016) (citing *In re Appeal of Greens of Pine Glen Ltd.*, 356 N.C. 642, 647 (2003)). Under *de novo* review, this Court "consider[s] 'the matter anew and freely substitutes its own judgment' in place of the Commission's.'" *In re Lowe's Home Centers, LLC*,

257 N.C. App. 610, 614 (2018) (quoting *In re Appeal of Westmoreland-LG&E Partners*, 174 N.C. App. 692, 696 (2005)). In contrast, "issues such as sufficiency of the evidence to support the Commission's decision are reviewed under the whole-record test." *In re Appeal of Greens of Pine Glen Ltd.*, 356 N.C. at 647. Under the whole-record test, "the reviewing court merely determines whether an administrative decision has a rational basis in the evidence." *Id.* (cleaned up).

B.     Appellant's Burden

"All property, real and personal, shall as far as practicable be appraised or valued at its true value in money." N.C.G.S. § 105-283 (2025).

> "[T]rue value" shall be interpreted as meaning market value, that is, the price estimated in terms of money at which the property would change hands between a willing and financially able buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of all the uses to which the property is adapted and for which it is capable of being used.

*Id.*

The appraisal of real property is governed by N.C.G.S. § 105-317 which outlines that in determining the true value of land, appraisers shall

> consider as to each tract, parcel, or lot separately listed at least its advantages and disadvantages as to location; zoning; quality of soil; waterpower; water privileges; dedication as a nature preserve; conservation or preservation agreements; mineral, quarry, or other valuable deposits; fertility; adaptability for agricultural, timber-producing, commercial, industrial, or other uses; past income; probable future income; and any other factors

that may affect its value except growing crops of a seasonal
or annual nature.

N.C.G.S. § 105-317(a)(1).

N.C.G.S. § 105-317 "has been interpreted as authorizing three property valuation methods: (1) the income approach, (2) the cost approach, and (3) the sales comparison approach." *In re Ashley Furniture Indus., Inc.*, 294 N.C. App. 667, 673 (2024) (citation omitted). The general statutes do not require that " 'any particular method of valuation be used at all times and in all places.' " *Id.* (quoting *In re Appeal of Greens of Pine Glen Ltd.*, 356 N.C. at 648). Rather, authorities valuing land " 'are given discretion to apply the method that most accurately captures the "true value" of the property in question.' " *Id.* (quoting *In re Appeal of Greens of Pine Glen Ltd.*, 356 N.C. at 648).

Still, "the income approach is generally considered the most reliable method for determining the market value of investment property" and "the cost approach is better suited for valuing specialty property or newly developed property and is often used when no other method will yield a realistic result." *In re Appeal of Greens of Pine Glen Ltd.*, 356 N.C. at 648. Meanwhile, the sales comparison approach, which "compares the subject property with market data based upon an appropriate unit of comparison[,]" is "the most reliable and accepted method of appraising real estate." *In re Ashley Furniture Indus., Inc.*, 294 N.C. App. at 673–74 (citations and internal quotation marks omitted).

"Under the sales comparison approach, '[t]he prices achieved from the recent sales of comparable properties are analyzed and adjusted for differences in location, size, age, condition, date of sale, special suitability or any other appropriate factor[.]'" *Id.* (quoting Damien Abbott, *Encyclopedia of Real Est. Terms* 1036 (Delta Alpha Publishing, 2d ed. 2000) [hereinafter Abbott, *Real Est. Terms*]). "'[T]hen the adjusted price is applied to arrive at a value for the property under consideration.'" *Id.* (quoting Abbott, *Real Est. Terms* at 1036). While reliable, the sales comparison approach "is limited by the availability of data on recent and directly comparable property." *Id.* (quoting Abbott, *Real Est. Terms* at 1036).

"It is also a sound and fundamental principle of law in this State that ad valorem tax assessments are presumed to be correct." *In re Lowe's Home Centers, LLC*, 257 N.C. App. at 615 (quoting *In re Amp, Inc.*, 287 N.C. 547, 562 (1975)). "As a result of this presumption, when such assessments are attacked or challenged, the burden of proof is on the taxpayer to show that the assessment was erroneous." *Id.* (quoting *In re Amp, Inc.*, 287 N.C. at 562). "Of course, the presumption is only one of fact and is therefore rebuttable." *Id.* (quoting *In re Amp, Inc.*, 287 N.C. at 563).

To rebut the presumption of correctness, the taxpayer must "'produce "competent, material and substantial" evidence that tends to show that: (1) Either the county tax supervisor used an arbitrary method of valuation; or (2) the county tax supervisor used an illegal method of valuation; AND (3) the assessment substantially exceeded the true value in money of the property.'" *In re Harris Teeter, LLC*, 378

N.C. 108, 120 (2021) (quoting *In re AMP, Inc.*, 287 N.C. at 563). An illegal appraisal method is one which will not result in true value as that term is used in N.C.G.S. § 105-283." *Id.* (cleaned up). "In order to show that the County's initial assessment 'substantially exceeded the true value in money of the property,' the taxpayer must show that 'the valuation was unreasonably high.' " *Id.* (quoting *In re AMP, Inc.*, 287 N.C. at 563).

This Court has emphasized that the taxpayer's evidence need not conclusively prove that the valuation was arbitrary, illegal, or substantially in excess of the true value. *See In re IBM Credit Corp.*, 186 N.C. App. 223, 226–28 (2007). Rather, the taxpayer's burden " 'is one of production and not persuasion.' " *In re Lowe's Home Centers, LLC*, 257 N.C. App. at 615 (quoting *In re Appeal of Villas at Peacehaven, LLC*, 235 N.C. App. 46, 49 (2014)). If the taxpayer satisfies this initial burden, "the County is then required to 'demonstrate [ ] that the values determined in the revaluation process were not substantially higher than that called for by the statutory formula' and 'demonstrate the reasonableness of its valuation "by competent, material and substantial evidence." ' " *In re Harris Teeter, LLC*, 378 N.C. at 120 (quoting *In re McElwee*, 304 N.C. at 86–87) (alteration in original). The Commission must then weigh all the evidence to determine whether the county met its burden. *In re Villas at Peacehaven, LLC*, 235 N.C. App. at 49.

This Court held that a taxpayer met its burden in *In re Lowe's Home Centers, LLC*. 257 N.C. App. at 617. There, Forsyth County appraised Lowe's Home Centers,

LLC's ("Lowe's") commercial property at $16,100,000.00 or $118.69 per square foot. *Id.* at 611. Lowe's appealed the appraisal to the Commission and "introduced four expert witnesses who testified to factors used in the valuation process, as well as their valuation of the subject [p]roperty." *Id.* The first expert was a real estate appraiser who testified that the valuation per square foot of other Lowe's properties in North Carolina ranged from $18.48 to $39.34 per square foot. *Id.* The second expert was the Director of Real Estate for Lowe's and testified that the per-square-foot appraisal of the subject property was the highest valuation of any Lowe's in the United States. *Id.* at 612. The third expert testified that Forsyth county's valuation of the subject property was more than double the average valuation of Lowe's in other counties. *Id.* Finally, the fourth expert was an independent real estate appraiser who testified that he appraised the property under the standards mandated by N.C.G.S. § 105-283. *Id.* at 613. He considered the value of the real estate to the general real estate market, instead of the investment value, and valued the property at $6,340,000.00 or $46.74 per square foot.

The Commission granted Forsyth County's motion to dismiss at the conclusion of Lowe's argument. *Id.* The Commission concluded that the most appropriate method to determine the true value of the property was the cost approach employed by the county, while Lowe's had presented evidence on the sales comparison approach and the income approach. *Id.* at 615. This Court disagreed and held that the cost approach was not likely to yield the real true value of the property, making Forsyth

County's reliance on that method illegal. *Id.* at 616–17. Additionally, this Court held that Lowe's met its burden of producing evidence tending to show that the assessment substantially exceeded the property's true value by "explain[ing] their valuation methods in detail and how they resulted in a valuation of $6,340,000.00[,]" which was less than half of Forsyth County's valuation. *Id.* at 617.

Here, appellant's comparative assessment evidence tended to show that the County employed an arbitrary valuation method by demonstrating that the valuations did not align with material differences in lot size, location, noise, and zoning. Appellant's main contention was that the County's identical assessment of land values in his community was arbitrary. Appellant's testimony that his property was smaller and noisier than other properties valued at the same amount provided competent evidence that the identical assessment was not accounting for statutorily required considerations such as "advantages and disadvantages as to location." *See* N.C.G.S. § 105-317(a)(1). Appellant provided further evidence in support of his argument by showing that before the 2024 valuation method was implemented, the land values of the properties in his communities were assessed at different values.

Similarly, appellant provided evidence that the valuation of his land that resulted from the 2024 valuation method did not align with the valuation of comparable properties outside of his townhouse community. For example, his land was assessed at a higher value than larger lots and lots with more flexible zoning. Together, appellant's evidence that the County's valuations were identical where they

should have been individualized, and the valuation of the subject property was higher than other nearby properties for no discernable reason constituted competent evidence tending to show that the County employed an arbitrary valuation method.

Appellant's comparative assessment evidence also tended to show that the County's valuation of the subject property's land substantially exceeded its true value. Among all of the townhouse properties that appellant identified, the subject property had the highest per-acre value of $2,500,000.00 which was double the median per-acre value of the other townhouses. Additionally, the actual assessed value of the subject property was significantly higher than each of the nine townhouse properties outside of his community, despite evidence suggesting that the subject property should be assessed at a lower value than many of those properties. Appellant also provided several reasons why his lot was inferior to the other lots in his community valued at the same amount.

The County urges this Court to affirm the Commission's decision because appellant's evidence did not include sufficient analysis demonstrating the subject property's true land value. The County points to the fact that appellant's evidence mainly relies on the County's own valuations as opposed to the valuation methods authorized by N.C.G.S. § 105-317. Additionally, while appellant did provide data on sales of comparable properties, the data is not adjusted to account for factors such as land size. The County contends that without evidence of the subject property's true land value as calculated in compliance with N.C.G.S. § 105-317, appellant cannot

demonstrate that the assessed value differs from the true value, or, by extension, that the County used an arbitrary or illegal valuation method and that the valuation substantially exceeded the true value.

Certainly, independent appraisals and expert analysis of a property's true value can strengthen a taxpayer's evidence. However, we hold that such evidence is not necessarily required in order for a taxpayer to meet their initial burden. The taxpayer's burden is not to conclusively prove or persuade the Commission that the assessed value substantially exceeds the true value. Rather, the taxpayer must produce evidence *tending to show* as much. The data that appellant presented consistently showed that his property was assessed at a disproportionately high value compared to other properties. Even without additional analysis on the true value of the property, the fact that appellant's property was assessed at such a high value compared to other properties does suggest that the subject property's land was overvalued.

Requiring a more sophisticated analysis would in effect require that taxpayers present expert appraisal testimony, making it nearly impossible for many taxpayers to overcome the presumption of correctness. The County cites no authority imposing such a high burden or otherwise expressly requiring taxpayers to present evidence of the subject property's true value. Accordingly, we decline to read such a requirement into the taxpayer's initial burden of production.

Therefore, we hold that appellant met his burden of production to successfully

rebut the presumption that the County's assessment was correct and the Commission erred by dismissing his appeal. We remand the case for further proceedings, including the County's presentation of evidence to support their assessment.

## III. Conclusion

For the foregoing reasons, we reverse the Commission's decision dismissing appellant's appeal and remand for further proceedings.

REVERSED AND REMANDED.

Judges STROUD and COLLINS concur.